## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

JACKIE ROSIPKO
6770 Gar Highway
Montville, OH 44064

BRIAN HASSETT
32678 Admiral's Way
Avon Lake, OH 44012

EDWARD LENNON
128 N. Glengarry Rd.
Bloomfield Hills, MI 48301

    Plaintiffs,

 vs.

FCA US, LLC
c/o its agent for service of process,
The Corporation Company
30600 Telegraph Road, Suite 2345
Bingham Farms, MI 48025

  and

SCHRADER-BRIDGEPORT
INTERNATIONAL, INC.
c/o its agent for service of process,
The Corporation Company
30600 Telegraph Road, Suite 2345
Bingham Farms, MI 48025

  Defendants.

CASE NO. 2:15-CV-11030

 Hon. Gershwin A. Drain
Magistrate Judge Anthony P. Patti

**FIRST AMENDED CLASS ACTION
COMPLAINT WITH JURY DEMAND**

Now come Plaintiffs Jackie Rosipko, Brian Hassett, and Edward Lennon individually and as representatives of all others similarly situated, and for their Class Action Complaint state:

### INTRODUCTION

This is a class action brought by Jackie Rosipko, individually and as a putative class representative, against FCA US, LLC ("FCA") and Schrader-Bridgeport International, Inc.

("Schrader") (collectively "Defendants"), and Brian Hassett, and Edward Lennon, individually and as putative representatives against Schrader,[1] for Defendants' practice of using defective tire pressure monitoring systems (TPMS) in FCA's vehicles. A TPMS is in the valve stem which holds the air in the tire. When the system fails, including while vehicles are being used at highway speeds, rapid deflation of the tire risks a serious or fatal loss of control. Defendants' TPMS were designed using an exposed metal valve stem system which corrodes, resulting in failure. Other auto manufacturers switched to rubber-coated TPMS stems in their vehicles during the class period to avoid this exact problem. Defendants did not. Defendants knew or should have known that their aluminum stem TPMS was inferior, defective, and would foreseeably cause harm to their customers. Nonetheless, Defendants continued to use the defective TPMS design. This suit seeks damages for the class based on the defect, including the cost of replacement or refund. This complaint does not assert, and is not intended to assert, class standing for wrongful death or personal injury claims, or any damages therefrom.

## PARTIES

1.   Jackie Rosipko is an individual and resident of the State of Ohio, County of Geauga, and City of Montville.

2.   Brian Hassett is an individual and resident of the State of Ohio, County of Lorain and City of Avon Lake.

3.   Edward Lennon is an individual and resident of the State of Michigan, County of Oakland, Township of Bloomfield.

4.   Defendant FCA US, LLC (hereinafter "FCA") is a Delaware limited-liability corporation. Defendant FCA's corporate headquarters, primary manufacturing, design, and

---

[1] Per the stipulated Order at Doc. No. 16, Plaintiffs Hassett and Lennon are withdrawing their individual claims against FCA.

testing facilities are all in the State of Michigan. Defendant FCA manufactures automobiles and automobile components.

5.    Defendant Schrader-Bridgeport International, Inc. (hereinafter "Schrader") is a Delaware corporation that is headquartered in Colorado. Defendant Schrader manufactures automobile components. Defendant Schrader has substantial and ongoing contact with the State of Michigan. The TPMS products at issue in this lawsuit are at least in substantial part developed, engineered, designed, tested, marketed, sold, and supported by Schrader facilities and personnel in the State of Michigan.

## JURISDICTION AND VENUE

6.    This Court has personal jurisdiction over Defendants based on their persistent contact with Michigan by which they generate substantial revenue, and based on conduct in Michigan out of which the claims in this matter arose.

7.    This Court has original jurisdiction over all claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the matter in controversy exceeds the sum or value of $5 million, in the aggregate, exclusive of interest and costs, and this is a putative class action involving at least one hundred members in the proposed class and Plaintiff is not a citizen of the same state as Defendants.

8.    The State of Michigan has an overwhelming state interest in protecting its citizens, and the citizens of the United States of America, from inferior products developed, engineered, designed, tested, marketed, sold, and supported from facilities located within Michigan, and ensuring these products meet the standards that Michigan law imposes.

## TIRE PRESSURE MONITORING SYSTEMS

9.      Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

10.     Tire pressure monitoring systems (hereinafter "TPMS") are electronic devices equipped with sensors that measure the air pressure in automobile tires. The sensor is part of the valve stem in each tire which monitors the pressure of each tire individually and transmits that information to the vehicle's internal computer.

11.     The TREAD Act, 49 U.S.C. §§ 30101-30170, requires that all automobiles manufactured after September 2007 include TPMS. All FCA vehicles with a model year of 2007 or later have TPMS installed.

12.     The claims asserted in this lawsuit against Schrader concern all FCA vehicles that were manufactured with tire pressure monitoring systems that included an exposed metal valve stem; the claims asserted in this lawsuit against FCA concern all FCA vehicles manufactured after June 10, 2009 that were built with tire pressure monitoring systems that included an exposed metal valve stem (collectively said vehicles are referred to as "Class Vehicles").

13.      Defendant Schrader designed and manufactured the TPMS sensors used in the Class Vehicles.

14.     Defendant FCA exercised control over, had input in, and/or approved the design of the TPMS sensors used in the Class Vehicles. FCA then sold the Class Vehicles to Plaintiff and other members of the public.

15.     Each Defendant acted in concert with, and with the consent of, each other, and each Defendant ratified or agreed to accept the benefit of the conduct of the other Defendant, as relates to the subject TPMS.

**CORROSION OF UNSHEATHED METAL STEMS**

16.    Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

17.    TPMS sensors sit mostly inside the tire, attached through the wheel, and held in place by a retaining nut. The sensors include an exposed metal valve stem that protrudes from the wheel, which serves as the valve to inflate or add air to the tire.

18.    Because the TPMS valve stem protrudes outside the wheel, it is exposed to harsh environmental conditions that corrode metal parts. In fact, "valve stems are exposed every minute of the day."[2]

19.    The valve stems in the TPMS sensors installed in the Class Vehicles are made from material that is vulnerable to corrosion. This corrosion problem was well known to Defendants and was avoidable.

20.    As early as 2007, other auto manufacturers, such as GM and Ford, began using TPMS sensors with a rubber sheath that coats the valve stem. The rubber sheath protects the valve stem from corrosion sufficiently that it "completely avoids most corrosion problems."[3]

21.    Indeed, Defendant Schrader designs and manufactures such rubber-sheathed TPMS sensors.

22.    FCA, despite having years to recognize the advantages of the rubber-sheathed valve stems, continues to require the design, manufacture, and use of TPMS units for its vehicles with unsheathed metal valve stems.

23.    FCA and Schrader knew, or should have known, that the TPMS sensors in the Class Vehicles are likely to corrode as a consequence of Defendants' decision to continue using unsheathed metal valve stems.

---

[2] http://tires.about.com/od/Tire_Safety_Maintenance/a/Achey-Breakey-Parts-Tpms-And-Corrosion.htm
[3] Id.

24.     The harms which result to the Plaintiffs and putative class members from the use of these defective stems include and are not limited to:

  a. Rendering the TPMS inoperative, and thereby disabling an essential and legally required vehicle safety feature;

  b. Damaging the valve stem so that it snaps off, creating a hole in the wheel that rapidly deflates the tire and damages the TPMS sensor, the tire, and/or the wheel;

  c. Damaging the retaining nut, causing the TPMS sensor to fall into the tire and creating a hole in the wheel that rapidly deflates the tire and damages the TPMS sensor, the tire, and/or the wheel; and/or

  d. Causing other vehicle damage that result from the failure of the TPMS valve stem, including, but not limited to, crashes and other vehicle accidents resulting from the rapid deflation of vehicle tires.

25.     Defendants' unsheathed metal valve stems are defective, Defendants knew or should have known that they are defective, and Defendants' failure to correct the defect has harmed Plaintiff and the putative class members.

## GALVANIC CORROSION

26.     Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

27.     FCA's decision to manufacture its TPMS valve stems in this way also creates the problem and defect of galvanic corrosion inside the valve stem.

28.     Galvanic corrosion occurs when two dissimilar metals, such as aluminum and brass, come into contact. When galvanic corrosion occurs, one of the metals corrodes rapidly at the point of contact.

29.     An essential component of a TPMS sensor, the valve core is inserted inside the valve stem. When the core of the TPMS unit is inserted into the valve stem, two dissimilar metals come into direct contact within the TPMS unit which results in galvanic corrosion. This galvanic corrosion weakens and deforms the valve stem, trapping the valve core inside the valve stem and preventing it from being removed.

30.     This problem is so common that specialized tools, such as the Ken-Tool reCore TPMS Sensor Saver System, have been developed to try to salvage the TPMS after it has been damaged by galvanic corrosion.[4]

31.     When such tools are unavailable or ineffective, galvanic corrosion can destroy the TPMS sensor, requiring the vehicle's owner to pay for its replacement.

32.     Schrader makes other TPMS sensors with a brass valve stem that will not galvanically corrode when in contact with brass valve cores.

33.     Other automobile manufacturers, such as Ford and GM, use brass valve stems for the same reason, and began doing so as early as 2007.

34.     FCA designed the Class Vehicles to use these exposed, metal valve stems, despite the fact that it knew or should have known that a) there is a better and safer design; and b) other automotive manufacturing companies in the industry have used this better and safer design for years, including avoiding the known defect of galvanic corrosion.

---

[4] http://www.kentool.com/recore/

35.     Schrader designed and manufactured TPMS sensors with these exposed, metal valve stems for use in the Class Vehicles, despite the fact that it knew or should have known the problems and defects discussed above.

36.     Defendants' exposed metal valve stems/TPMS units are defective, Defendants knew or should have known that they are defective, and Defendants' failure to correct the defects has harmed Plaintiff and the putative class members.

## NON-REPLACEABLE VALVE STEMS

37.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

38.     The valve stems used in the Class Vehicles' TPMS sensors are integral components that cannot be replaced. If a valve stem is damaged, by corrosion, galvanic corrosion, or any other cause, the entire sensor must be replaced.

39.     However, Defendant Schrader developed and manufactures a successful two-piece TPMS sensor with replaceable valve stems. Schrader's EZ-sensor system has been described as the best TPMS sensor available, in part because "the EZ-sensor also features a two-part design with a rubber snap-in valve stem that can be easily removed from the sensor and replaced, eliminating many of the design flaws that have bedeviled one-piece OEM sensors with metal valve stems."[5]

40.     FCA has chosen not to implement the two-piece TPMS design when creating the Class Vehicles, despite the fact that FCA knew or should have known that its integral metal valve stems were inferior and defective.

---

[5] http://tires.about.com/od/Tire_Safety_Maintenance/a/Aftermarket-Tire-Pressure-Monitoring-Systems.htm

41.     Schrader continued to design and manufacture TPMS sensors with integral metal valve stems, despite the fact that Schrader knew or should have known that those valve stems were inferior and defective.

42.     The customers who purchased the Class Vehicles ultimately paid the cost for Defendants' use of defective components. Upon information and belief, replacement valve stems typically cost $5.00 or less, whereas an entire TPMS sensor costs $50.00 or more. Owners of Class Vehicles were forced to pay to repair an essential safety system because of Defendants' defective products

43.     Even more, the consumers who purchased the Class Vehicles were given a product that, due to its inferior design, had such a high risk of failure that the Defendants deprived the putative class members of the value of this TPMS unit.

44.     Defendants' integral valve stems are defective, Defendants knew or should have known that they are defective, and Defendants' failure to correct the defect has harmed Plaintiff and the putative class members.

**JACKIE ROSIPKO**

45.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

46.     Jackie Rosipko purchased a used 2010 Chrysler Town & Country (manufactured in May of 2010) from an FCA dealership. The vehicle included an integrated TPMS with exposed and unsheathed metal valve stems.

47.     The stems were designed, manufactured and/or used by Defendants FCA and Schrader.

9

2:15-cv-11030-GAD-APP   Doc # 18   Filed 07/02/15   Pg 10 of 24   Pg ID 79

48.     In February of 2015, Plaintiff took her 2010 Chrysler Town & Country in to get her tires looked at.

49.     While there, a mechanic discovered a TPMS sensor with severe corrosion, that was cracked and at risk for failure, such that it needed to be replaced.

50.     The mechanic replaced the damaged Schrader/FCA TPMS sensor.

51.     Plaintiff paid $80.98 for parts and labor to replace the damaged TPMS sensor. See Exhibit A.

52.     Three days later, Plaintiff took her car back in to the shop for a slow leak in another tire.

53.     Again, a mechanic discovered a TPMS sensor with corrosion.

54.     This time, Plaintiff paid $76.51 for parts and labor to replace the damaged TPMS sensor. See Exhibit B.

55.     Defendants represented to Plaintiff and the putative class that these component parts were safe for use.

56.     Moreover, Defendants failed to reveal to Plaintiff and the putative class that these component parts could fail like this.

57.     Plaintiff was deprived of the value of this TPMS unit because of Defendants' inferior design and the defects in the product as described.

58.     Moreover, Plaintiff and other consumers had no way to discover this defect on his or her own because to discover these defects, the wheel of the car has to be removed, the tire has to be removed from the rim and the sensor has to be inspected.

59.     Had Plaintiff known of this defect, it would have affected her decisions at the time of her purchase of the vehicle.

## BRIAN HASSETT

60.     Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

61.     Brian Hassett purchased a 2009 Chrysler 300 including integrated TPMS with exposed and unsheathed metal valve stems.

62.     The stems were designed, manufactured and/or used by Defendants FCA and Schrader.

63.     In September 2013, a tire on Mr. Hassett's vehicle blew out catastrophically while he was driving on the highway.

64.     Hassett took his vehicle to a mechanic, who discovered that another exposed metal valve stem in another of Hassett's tires had a TPMS sensors with severe corrosion, that was cracked and at risk for failure, such that it needed to be replaced.

65.     Hassett paid $247.78 for parts and labor to replace the damaged sensors. See Exhibit C.

66.     Again, in November of 2014, another tire on Hassett's vehicle deflated while driving.

67.     This sudden loss of tire pressure occurred because of severe corrosion to the TPMS unit, which caused a crack in the sensor and leak in the tire.

68.     This time, Hassett paid $99.90 for parts and labor to replace the damaged sensor. See Exhibit D.

69.     Defendants represented to Hassett and the putative class that these component parts were safe for use.

70.     Moreover, Defendants failed to reveal to Hassett and the putative class that these component parts could fail like this.

71.     Hassett was deprived of the value of this TPMS unit because of Defendants' inferior design and the defects in the product as described.

72.     Moreover, Hassett and other consumers had no way to discover this defect on his or her own because to discover these defects, the wheel of the car has to be removed, the tire has to be removed from the rim and the sensor has to be inspected.

73.     Had Hassett known of this defect, it would have affected his decisions at the time of his purchase of the vehicle.

## EDWARD LENNON

74.     Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

75.     Edward Lennon leased and then purchased a 2008 Jeep Commander which includes the TPMS units challenged in the present action.

76.     The stems were designed, manufactured and/or used by Defendants FCA and Schrader.

77.     On or about January 28, 2015, Lennon took in his vehicle to a mechanic.

78.     After inspecting the TPMS units on Lennon's vehicle, the mechanic had to cut two of the sensors off due to corrosion, rust, and/or fusion.

79.     Lennon paid $363.16 to replace all four of these TPMS units. See Exhibit E.

80.     Defendants represented to Lennon and the putative class that these component parts were safe for use.

81.     Moreover, Defendants failed to reveal to Lennon and the putative class that these component parts could fail like this.

82.     Lennon was deprived of the value of this TPMS unit because of Defendants' inferior design and the defects in the product as described.

83.     Moreover, Lennon had no way to discover this actual defect on his own until he took the vehicle in to the mechanic.

84.     Had Lennon known of this defect, it would have affected his decisions at the time of his lease and/or purchase of the vehicle.

## CLASS ALLEGATIONS

85.     Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

86.     Plaintiff Rosipko brings this action against FCA on behalf of herself and for all other persons similarly situated  who own any FCA vehicle of manufactured after June 10, 2009 (including Chrysler, Dodge and Jeep) where the original equipment manufacturer of the TPMS unit utilized an integral exposed metal Schrader valve stem ("FCA Class").

87.     Plaintiffs Rosipko, Hassett, and Lennon bring this action against Schrader on behalf of themselves and for all other persons similarly situated who own any FCA vehicle (including Chrysler, Dodge and Jeep) where the original equipment manufacturer of the TPMS unit utilized an integral exposed metal Schrader valve stem ("Schrader Class").Those persons meeting the definition of the FCA Class and Schrader Class are collectively referred to herein as "putative class members."

88.    Each class numbers over forty (40) persons and is so numerous that joinder of all members is impracticable, and it is further impracticable to bring all such persons before this Court.

89.    The injuries and damages to the class members in each class present questions of law and fact that are common to each class member, and that are common to the entire class as a whole.

90.  Defendants have engaged in the same conduct regarding all of the other members of the class asserted in this suit.

91.  The claims, defenses, and injuries of the representative Plaintiffs, are typical of the claims, defenses and injuries of the other class members, and the claims, defenses and injuries of each class member are typical of those of the entire class.

92.  Representative Plaintiffs will fully and adequately protect their respective classes, and all of its putative class members.

93.  The identity of all members of each class cannot be determined at this time, but will be so determined at a later time upon obtaining discovery from Defendants and others.

94.  The prosecution of separate actions by each member of each class would create a substantial risk of inconsistent or varying adjudications with regard to individual members of each class that would establish incompatible standards of conduct for Defendants.

95.  The prosecution of separate actions would also create a substantial risk of adjudication with respect to individual members of each class which, as a practical matter, would be dispositive of the interest of other members not parties to the adjudication, thereby substantially impairing and impeding their ability to protect these interests. Further, the

maintenance of this suit as a class action is the superior means of disposing of the common questions which predominate herein.

## FIRST CLAIM FOR RELIEF
### Unjust Enrichment

96.   Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

97.   When Plaintiffs and the putative class members purchased their vehicles with the defective TPMS units, they conferred a monetary benefit upon Defendants.

98.   Defendants have retained this benefit under circumstances where it would be unjust to do so, to wit:

   a.   Given the defective TPMS units, Defendants designed, manufactured, and delivered to Plaintiff and the putative class members a vehicle with a component part worth less than the value Defendants purported to give and less than the consumers expected.

   b.   The difference in value between the Class Vehicles as sold and the Class Vehicles as actually delivered (i.e. a partial refund of the purchase price of the Class Vehicles equal to the value of the defective TPMS unit) is the value of the unjust benefit conferred upon Defendants by Plaintiff and the putative class members.

99.   As a direct and proximate result of Defendants' acts, Defendant FCA must disgorge all such unjust revenue and return it to Plaintiff Rosipko and the FCA Class and Defendant Schrader must disgorge all such unjust revenue and return it to Plaintiff Rosipko, Hassett and Lennon and the Schrader Class.

## SECOND CLAIM FOR RELIEF
### Violation of Michigan Consumer Protection Act,
### Michigan Comp. Laws Ann. § 445.903 et seq.

100.   Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

101.   At all times relevant hereto, Mich. Comp. Laws Ann. § 445.903 et seq. (the "MCPA") was in full effect; Plaintiffs and the putative class members were "person[s]" within

the meaning of the MCPA; and Defendants were "persons" engaged in "trade or commerce" within the meaning of the MCPA.

102.   The MCPA makes unlawful any "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws Ann. § 445.902(1).

103.   The practices of Defendants violate the MCPA for, inter alia, one or more of the following reasons:

    a.   represented that the Class Vehicles had approval, characteristics, uses, and benefits that they do not have;

    b.   Defendants provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements and information to consumers regarding the safety, performance, reliability, quality, and nature of the Class Vehicles;

    c.   Defendants represented that the Class Vehicles were of a particular standard, quality, or grade, when they were of another;

    d.   Defendants engaged in unconscionable commercial practices in failing to reveal material facts and information about the Class Vehicles, which did and tended to mislead Plaintiff and the putative class members about facts that could not reasonably be known by the consumer;

    e.   Defendants failed to reveal facts concerning the TPMS unit defect that were material to the transaction;

    f.   Defendants failed to reveal material facts concerning the TPMS unit defect to Plaintiff and the putative class members, the omission of which would tend

16

to mislead or deceive consumers, including Plaintiff and the putative class members;

104.   Plaintiff Rosipko and the FCA Class seek injunctive relief to enjoin Defendant FCA from continuing their unfair and deceptive acts and seek monetary relief against Defendant FCA measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 each for Plaintiff Rosipko and the members of the FCA class, reasonable attorneys' fees; and any other just and proper relief available under the Mich. Comp. L. Ann. § 445.911.

105.   Plaintiff Rosipko, Hassett and Lennon and the Schrader Class seek injunctive relief to enjoin Defendant Schrader from continuing their unfair and deceptive acts and seek monetary relief against Defendant Schrader measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 each for Plaintiff Rosipko, Hassett and Lennon and the members of the FCA class, reasonable attorneys' fees; and any other just and proper relief available under the Mich. Comp. L. Ann. § 445.911.

<u>**THIRD CLAIM FOR RELIEF**</u>
**Violation of the Magnuson-Moss Warranty Act,**
**15 U.S.C. § 2301, et. seq.**

106.   Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

107.   At all times relevant hereto, there was in full force and effect the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. (the "MMWA").

108.   The Defective Vehicles are consumer products within the meaning of 15 U.S.C. § 2301(1).

109.    Plaintiffs and the putative class members are consumers as defined in 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranty.

110.    Defendants are suppliers and warrantors within the meaning of 15 U.S.C. § 2301(4) and (5).

111.    Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are  not required to give Defendants notice or an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

112.    In connection with its sale of the Class Vehicles, Defendants gave an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability. As a part of the implied warranty of merchantability, Defendants warranted that the Class Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured and marketed, and were adequately contained, packaged and labeled. Mich. Comp. Laws Ann. § 440.2314 et seq; UCC 2-314.

113.    Defendants are liable to Plaintiffs and the putative class members pursuant to 15 U.S.C. § 2310(d)(1), because they breached their implied warranty of merchantability.

114.    Defendants breached their implied warranty of merchantability to Plaintiffs and putative class members because the Class Vehicles were not fit for the ordinary purposes for which they are used; i.e. a safe passenger motor vehicle. Specifically, a defect which relates to motor vehicle safety exists in the Class Vehicles in that the TPMS unit is unacceptably susceptible to corrosion, galvanic corrosion, and other failure, which could and has resulted in catastrophic deflation of tires and loss of value of the TPMS unit itself and loss of value of the

vehicle. This safety defect makes the Class Vehicles unfit for their ordinary purpose of providing safe transportation.

115.    Defendants further breached their implied warranty of merchantability to Plaintiffs and the putative class members because the Class Vehicles would not pass without objection in the trade, as they contained a defect which relates to motor vehicle safety due to the defective TPMS units in each of the Class Vehicles.

116.    Defendants further breached its implied warranty of merchantability to Plaintiffs and the putative class members because the Class Vehicles were not adequately contained, packaged, and labeled. The directions and warnings that accompanied the Class Vehicles did not adequately instruct Plaintiffs on the proper use of the Class Vehicles in light of the defective TPMS units in the vehicles and the propensity of the units to corrode and fail, or adequately warn Plaintiff and the putative class members of the dangers of the failure of these TPMS units contained in each of the Class Vehicles.

117.    Pursuant to 15 U.S.C. § 2310(d)(1), Defendants caused Plaintiffs and the putative class members foreseeable harm, to wit: the difference in value between the Class Vehicles as sold and the Class Vehicles as actually delivered (i.e. a partial refund of the purchase price of the Class Vehicles equal to the value of the TPMS unit), plus loss of use and other consequential damages arising after the date of delivery of the Class Vehicles.

118.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the putative class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiffs and the putative class members in connection with the commencement and prosecution of this action.

119.    As it relates to this claim, Plaintiff Rosipko seeks damages and relief for herself and the FCA class against FCA, and Plaintiffs Rosipko, Hassett and Lennon seek damages and relief for themselves and the Schrader class against Schrader.

### FOURTH CLAIM FOR RELIEF
### Breach of the Implied Warranty of Merchantability
### Michigan Comp. Laws Ann. § 440.2314

120.    Plaintiffs reallege and incorporate herein all previous paragraphs of this Complaint.

121.    At all times relevant hereto, there was in full force and effect the Michigan Comp. Laws Ann. § 440.2314.

122.    Defendants are "merchants" as to the Class Vehicles within the meaning of Mich. Comp. Laws Ann. § 440.2104.

123.    Defendants manufactured and sold the Class Vehicles and the TPMS units, which are "goods" within the meaning of Michigan Comp. Laws Ann. § 440.2105.

124.    Consequently, pursuant to Michigan Comp. Laws Ann.§ 440.2314, Defendants impliedly warranted that the Class Vehicles were merchantable, including that they were fit for their ordinary purposes as safe passenger vehicles, they could pass without objection in the trade, and they were adequately contained, packaged, and labeled.

125.    Defendants breached their implied warranty of merchantability to Plaintiffs and the putative class members because the Class Vehicles were not fit for the ordinary purposes for which they are used; i.e. a safe passenger motor vehicle. Michigan Comp. Laws Ann. § 440.2314(2)(c). Specifically, a defect which relates to motor vehicle safety exists in the Class Vehicles in that the TPMS unit is unacceptably susceptible to corrosion, galvanic corrosion, and other failure, which could and has resulted in catastrophic deflation of tires and loss of value of

20

the TPMS unit itself and the vehicle. This safety defect makes the Class Vehicles unfit for their ordinary purpose of providing safe transportation.

126.   Defendants further breached their implied warranty of merchantability to Plaintiffs and the putative class members because the Class Vehicles would not pass without objection in the trade, as they contained a defect which relates to motor vehicle safety due to the defective TPMS units in each of the Class Vehicles. Mich. Comp. Laws Ann. § 440.2314(2)(a).

127.   Defendants further breached their implied warranty of merchantability to Plaintiffs and the putative class members because the Class Vehicles were not adequately contained, packaged, and labeled. The directions and warnings that accompanied the Class Vehicles did not adequately instruct Plaintiffs on the proper use of the Class Vehicles in light of the defective TPMS units in the vehicles and the propensity of the units to corrode and fail, or adequately warn Plaintiffs and the putative class members of the dangers of the failure of these TPMS units contained in each of the Class Vehicles. Mich. Comp. Laws Ann. § 440.2314(2)(e).

128.   At the time of the delivery of the Class Vehicles, Defendants did not adequately instruct Plaintiffs on the proper use of the Class Vehicles in light of the defective TPMS units in the vehicles and the propensity of the units to corrode and fail, or adequately warn Plaintiff and the putative class members of the dangers of the failure of these TPMS units contained in each of the Class Vehicles.

129.   As a proximate result of the Defendants' breach of the implied warranty of merchantability, Defendants caused Plaintiffs and the putative class members foreseeable harm, to wit: the difference in value between the Class Vehicles as sold and the Class Vehicles as actually delivered (i.e. a partial refund of the purchase price of the Class Vehicles equal to the

value of the TPMS unit), plus loss of use and other consequential damages arising after the date of delivery of the Class Vehicles. Mich. Comp. Laws Ann. §§ 440.2714(3) and 440.2715.

130.   It was not necessary for Plaintiffs and each putative class members to give Defendants notice of its breaches of the implied warranty of merchantability because Defendants had actual notice of the fact that the Class Vehicles contained a defect relating to motor vehicle safety. Prior to the filing of this action, Defendant Schrader has manufactured and advertised a new and improved design that eliminates the issues of corrosion in the TPMS units, which is an implicit acknowledgement of the defect in these TPMS units and an attempt to rectify the design flaws that have caused numerous catastrophic tire deflations and damage to tires, the TPMS units themselves, and the Class Vehicles.

131.   Moreover, prior to the filing of this action, Defendants knew or should have known that other automobile manufactures began implementing a new, two-piece rubber-sheath TPMS design that eliminated the problems associated with the exposed metal integrated TPMS unit design. Additionally, the filing of this action is sufficient to give Defendants notice of its breaches of the implied warranty of merchantability with respect to the Class Vehicles.

132.   Defendants caused Plaintiff and the putative class members foreseeable harm, to wit: the difference in value between the Class Vehicles as sold and the Class Vehicles as actually delivered (i.e. a partial refund of the purchase price of the Class Vehicles equal to the value of the TPMS unit), plus loss of use and other consequential damages arising after the date of delivery of the Class Vehicles.

133.   In addition, Plaintiffs and the putative class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual

time expended) determined by the Court to have been reasonably incurred by Plaintiffs and the putative class members in connection with the commencement and prosecution of this action.

134.    As it relates to this claim, Plaintiff Rosipko seeks damages and relief for herself and the FCA class against FCA, and Plaintiffs Rosipko, Hassett and Lennon seek damages and relief for themselves and the Schrader class against Schrader.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff demand judgment as follows:

1.    For an Order determining at the earliest possible time that this matter may proceed as a class action under Rule 23 and certifying this case as such;

2.    For compensatory damages;

3.    For punitive damages;

4.    For such other or further relief as this Honorable Court deems Plaintiffs and the class entitled.

Respectfully submitted,

*s/ Frank A. Bartela*
Erik L. Walter, Esq. (P55132)
Patrick J. Perotti, Esq.
Nicole T. Fiorelli, Esq.
Frank A. Bartela, Esq.
**DWORKEN & BERNSTEIN CO., L.P.A.**
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391 // (440) 352-3469 Fax
Email: ewalter@dworkenlaw.com
           pperotti@dworkenlaw.com
           nfiorelli@dworkenlaw.com
           fbartela@dworkenlaw.com

Tom Robenhalt, Esq. (seeking admission)
**The Robenalt Law Firm, Inc.**
19702 Center Ridge Rd.
Rocky River, Ohio 44116

(216) 223-7535 // (216) 860-4390 Fax
Email:  trobenalt@robenaltlaw.com

Wolfgang Mueller, Esq.
**Mueller Law Firm**
34405 W. Twelve Mile Rd., Ste. 200A
Farmington Hills, MI  48331
(248) 489-9659 // (248) 489-9655 Fax

*Attorneys for Plaintiff*

## JURY DEMAND

Now come Plaintiff, by and through counsel, and hereby requests that the within matter be tried by a jury of the maximum number allowed by law.

Respectfully submitted,

*s/ Frank A. Bartela*
Frank A. Bartela, Esq.

*One of Attorneys for Plaintiff*