UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACKIE ROSIPKO, BRIAN HASSETT,
and EDWARD LENNON,

    Plaintiffs,

v.

    Case Number: 15-11030
    HON. GERSHWIN A. DRAIN

FCA US, LLC and SCHRADER-BRIDGEPORT
INTERNATIONAL, INC.,

    Defendants.
_____/

### ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [Dkt. Nos. 20 and 22]

### I. INTRODUCTION

On March 19, 2015, Plaintiffs Brian Hassett and Edward Lennon filed a four-count action against Defendants FCA US, LLC ("FCA") and Schrader-Bridgeport International, Inc. ("Schrader"). On July 2, 2015, a First Amended Complaint was filed. Therein, a new plaintiff, Jackie Rosipko, was added and the following claims were alleged: (a) unjust enrichment (Count I); (b) violation of the Michigan Consumer Protection Act ("MCPA"), M.C.L. § 445.903 *et seq.* (Count II); (c) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.* (Count III); and (d) breach of implied warranty of merchantability, M.C.L. § 440.2314 (Count IV). In the First Amended Complaint, only Rosipko asserts any claims against FCA. Plaintiffs title their First Amended Complaint as a class action complaint and propose to file their cause of action on behalf of themselves and as representatives of all others similarly situated.

Presently before the Court are two motions to dismiss, one filed by each Defendant on July 23, 2015. The motions are fully briefed, and a hearing was held on December 1, 2015. For the

reasons that follow, the Court will grant both motions to dismiss.

## II.  FACTUAL BACKGROUND

Plaintiffs' cause of action stems from Defendants' alleged practice of using defective tire pressure monitoring systems ("TPMSs") manufactured by Schrader in FCA vehicles.  Each TPMS is located in a tire valve stem and monitors the air in the tire.  Plaintiffs allege that each of the TPMSs used in FCA's vehicles was designed using an exposed metal valve stem system that corrodes, resulting in failure.  When the system fails, including while vehicles are being used at highway speeds, rapid deflation of the tire allegedly presents the risk of a serious or fatal loss of control.  According to Plaintiffs, other auto manufacturers switched to using rubber-coated TPMS stems in their vehicles during the class period to avoid this exact problem, but Defendants did not.  Plaintiffs claim that Defendants knew or should have known that their aluminum stem TPMS was inferior, defective, and would foreseeably cause harm to their customers. Nonetheless, Plaintiffs allege, Defendants continued to use the defective TPMS design.

Rosipko is a resident of Montville, Ohio, and she purchased a used 2010 Chrysler Town & Country vehicle from a FCA dealership in Ohio. First Amended Complaint, ¶¶ 1, 46.  In February 2015, while having the tires on the vehicle replaced at a third-party repair facility in Ohio, Rosipko was told by a mechanic at the repair facility that the left rear tire TPMS on her vehicle was corroded and needed to be replaced. *Id.* at 49.  At the time, Rosipko's minivan was 5 years old and had been driven for 81,230 miles. *Id.* at Ex. A, B.  Rosipko paid $80.98 for the repair. *Id.*  Three days later, Rosipko noticed a slow leak in the right front tire on her vehicle, and she had the TPMS in that tire replaced at the same third-party repair facility at a cost of $76.51. *Id.*

Hassett is an Avon Lake, Ohio resident who purchased a 2009 Chrysler 300.  It is unclear

when or where he purchased the vehicle, but he does not allege it was in Michigan and Plaintiffs' counsel allegedly has acknowledged it was not purchased in Michigan. Hassett alleges that in September 2013, with 63,500 miles on the vehicle, one of his tires "blew out catastrophically while he was driving on the highway." *Id.* at ¶ 47 and Ex. C. While repairing that tire, a mechanic "discovered that another exposed metal valve stem in another of Hassett's tires had a TPMS sensor[] with severe corrosion, that was cracked and at risk of failure, such that it needed to be replaced." *Id.* at ¶ 64. Hassett does not allege that the blown out tire had a TPMS valve stem with "severe corrosion." The repair invoice from an Ohio mechanic notes that Hassett directed the mechanic to "Check all 4 tires, left rear has been losing air." *Id.* at Ex. C. The invoice shows Hassett purchased one new tire and two "TPMS sensors." *Id.* at ¶ 65, Ex. C. One year and 25,000 miles later, "another tire on Hassett's vehicle deflated while driving," and he visited the same mechanic to check leaking left front and left rear tires. *Id.* ¶ 66, Ex. D. Hassett alleges a "sudden loss of tire pressure occurred because of severe corrosion to the TPMS unit, which caused a crack in the sensor and leak in the tire," and he had to replace the unit. *Id.* at ¶¶ 67, 68.

Lennon is a Michigan resident, and he alleges that he "leased and then purchased a 2008 Jeep Commander, which includes the TPMS units challenged in the present action." *Id.* at ¶¶ 93, 75. On January 28, 2015, at least five years and 107,773 miles after the vehicle was manufactured, Lennon brought it to a mechanic. *Id.* at ¶ 77, Ex. E. Lennon told the mechanic that the passenger rear tire was "low" and the tire sensor lamp had been "on for several years." *Id.* at Ex. E. The mechanic noted "all tires low." *Id.* Lennon alleges two sensors were corroded, rusted or fused and replaced all four. *Id.* at ¶¶ 78, 79. Lennon does not allege that the TPMS unit failed to monitor air pressure in the tires, but he claims he was "deprived of the value of his TPMS unit because of Defendants' inferior design

3

and the defects in the product as described" and had he "known of this defect, it would have affected his decision at the time of his lease or purchase of the vehicle." *Id.* at ¶¶ 82, 89.

Plaintiffs seek "damages for the class based on the defect, including the cost of replacement or refund." First Amended Complaint, Preamble.

### III. LAW & ANALYSIS

#### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.

4

Ct. 1937, 1949 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id.* at 1950.

The district court generally reviews only the allegations set forth in the complaint in determining whether to grant a Rule 12(b)(6) motion to dismiss, however "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F. 3d 493, 502 (6th Cir. 2001). Documents attached to a defendant's "motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.*

**B.     Withdrawn Claims - Counts I and IV**

In their response brief, Plaintiffs state that they are contesting the motions to dismiss only to the extent such motions relate to Counts II and III of the First Amended Complaint, *i.e.*, the claims for alleged violations of the MCPA and the MMWA. *See* Plf. Resp., Pg ID 184 n.1 ("Plaintiffs withdraw the remaining counts of their Complaint, Counts 1 and 4"– *i.e.*, the unjust enrichment and breach of implied warranty of merchantability claims). Accordingly, the Court dismisses Counts I and IV of the First Amended Complaint.

**C.     Plaintiffs' MCPA Claim - Count II**

Defendants assert several reasons the Court should dismiss of Plaintiffs' MCPA claim. For

the reasons set forth below, the Court finds that Plaintiffs' MCPA claim must be dismissed for failure to satisfy the heightened pleading requirements of Rule 9(b) that require a party to "state with particularity the circumstances constituting fraud." Accordingly, the Court will not address the other reasons Defendants assert the Court should dismiss Plaintiffs' MCPA claim.

To recover for fraud, a plaintiff must show that: (1) the defendant made a material representation; (2) it was false; (3) when the defendant made the statement, the defendant knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that it should be acted upon by plaintiff; (5) plaintiff acted in reliance upon it; and (6) the plaintiff thereby suffered injury. *See, e.g., Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976); *Home Owners Ins. Co. v. ADT LLC*, 2015 WL 3763489, at *5 (E.D. Mich. May 21, 2015). Furthermore, in order to meet the reliance element of a fraudulent or innocent misrepresentation claim, a plaintiff must prove that reliance on the misrepresentation was reasonable. *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675 (1999).

Like the Defendants, the Court finds that the First Amended Complaint is devoid of any averments regarding the first element of a fraud claim as to: (a) when or where any purported affirmative representations were made, (b) the precise content of what was represented, (c) who specifically made the representation(s), (d) the means by which such representation(s) were conveyed, or (e) when, where, or how Plaintiffs ever heard or saw any purported representation. Further, Plaintiffs fail to allege that either Defendant: (1) made any representation that was false, (2) had any knowledge when such alleged representation was made that it was false or made recklessly, or (3) made it with the intention that Plaintiffs should act upon it, such that (4) Plaintiffs

6

actually and reasonably did rely upon such representation.

Plaintiffs do not challenge Defendants' Rule 9(b) arguments. Instead, Plaintiffs argue that their MCPA claim "need not meet the particularity requirements of Rule 9(b) because they have alleged that the violation of the MCPA at issue is based on the unconscionable and unfair conduct of the Defendants." Plf. Resp. at 7-8 (citing First Amended Complaint, ¶ 103(d)). In ¶ 103(d), Plaintiffs allege: "Defendants engaged in unconscionable commercial practices in <u>failing to reveal material facts and information</u> about the Class Vehicles, which did and tended to mislead Plaintiff and the putative class members about facts that could not be reasonably known by the consumer." (emphasis added). Plaintiffs contend that Defendants fail to acknowledge that courts in the Eastern District of Michigan have held that "[t]he MCPA is much broader than the common law tort of fraud, covering not only deceptive practices but also unfair and unconscionable conduct." Citing *Date v. Sony Elect., Inc.*, 2010 WL 3702599, at *12 (E.D. Mich. Sept. 16, 2010); *Game On Ventures v. General RV Center, Inc.*, 587 F.Supp.2d 831, 839 (E.D. Mich. 2008). Thus, Plaintiffs suggest, they may bring a MCPA action based on the unfair or unconscionable conduct of Defendants, and they "need not necessarily allege the elements of fraud and certainly not plead a claim under the MCPA with the particularity required" by Rule 9(b). *Date*, 2010 WL 3702599, at *13.

Contrary to Plaintiffs' position, however, courts generally have held that "[t]he provisions of the MCPA are to be construed with reference to the common-law tort of fraud." *Kussy v. Home Depot U.S.A. Inc.*, 2006 WL 3447146, at *5 (E.D. Mich. Nov. 28, 2006) (citing *Mayhall v. A.H. Pond Co., Inc.*, 129 Mich.App. 178 (1983)). *See also In re OnStar Contract Litig.*, 278 F.R.D. 352, 376 (E.D. Mich. 2011) (citations omitted)("The provisions of the MCPA are to be construed with reference to the common-law tort of fraud."); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp.2d

642, 666 (E.D. Mich. 2011) (requiring fraud standard for MCPA claims).

Significantly, the Court finds that Plaintiffs' MCPA claim is based on both affirmative misrepresentations and alleged omissions.[1] Moreover, as Schrader notes, even ¶ 103(d) of the First Amended Complaint (the one paragraph of the First Amended Complaint Plaintiff cited in its response and at oral argument) indicates that the "unconscionable commercial practices" committed by Defendants were their "fail[ures] to reveal material facts and information" about the vehicles. Such language, on its face, suggests fraudulent conduct.

The Court also finds that the language used by Plaintiffs in ¶ 103(d) of the First Amended Complaint tracks the language of M.C.L. § 445.903(1)(s),[2] a statute that courts have interpreted to be a fraud claim. *See, e.g., In re OnStar Contract Litig.*, 278 F.R.D. 352, 376-77 (E.D. Mich. 2011) (treating allegation that defendants violated M.C.L. § 445.903(1)(s) by "failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer" as a fraud claim requiring particularity); *Kerrigan v. ViSalus, Inc.*, 2015 WL 3679266, at *27 (E.D. Mich. June 12, 2015) ("In order to state a claim pursuant to §445.903, Plaintiffs must 'state with particularity the circumstances constituting fraud or mistake,' consistent with Fed.R.Civ.P. 9(b)"); *Lipov v. Louisiana-Pacific Corp.*, 2013 WL

---

[1]Specifically, Plaintiffs allege that Defendants represented that TPMSs "were safe for use," "the Class Vehicles had approval, characteristics, uses, and benefits that they do not have," "the Class Vehicles were of a particular standard, quality, or grade, when they were of another," and they "disseminated, marketed, and otherwise distributed uniform false and misleading advertisements." First Amended Complaint, at ¶¶ 55, 69, 80, 103. Likewise, Plaintiffs allege that Defendants "failed to reveal . . . that [TPMSs] could fail" and "failed to reveal facts concerning the TPMS defect." *Id.* at ¶¶ 56, 70, 81, 103.

[2]M.C.L. § 445.903(1)(s) provides: "Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer."

8

3805673, at **2-3 (W.D.Mich. 2013) (where the MCPA claim is based on allegations that a defendant "failed to reveal" certain information, it is a fraud-based claim for which the plaintiff "must state the circumstances with particularity"). *See also Home Owners*, 2015 WL 3763489, at *5 (dismissing MCPA claim for failure to meet Rule 9(b) heightened pleading requirements because the plaintiff alleged that the defendants "actively and (or) passively concealed" information but did not allege "the time, the place, or the person making the misrepresentation" or "the content of the misrepresentation").

For the reasons stated above, the Court finds that Plaintiffs' MCPA claim based on failure to reveal defects related to the TPMS constitutes a fraud claim. *See, e.g., In re Onstar, Lipov, supra.* The Court further finds that Plaintiffs have not satisfied their burden of "stat[ing] with particularity the circumstances constituting fraud or mistake." *See, e.g., Kerrigan, Home Owners, supra.* Accordingly, the Court dismisses Plaintiffs' MCPA claim at Count II of the First Amended Complaint for failure to satisfy the heightened pleading requirement of Rule 9(b).

**D.    Plaintiffs' MMWA Claim**

Defendants argue that if Plaintiffs have "not pleaded a valid claim under the state law [they are] invoking, [they have] not pleaded a viable claim under the MMWA." *Demorato v. Carver Boat Corp.*, 304 F. App'x. 100, 104 (3d Cir. 2008) ("The District Court correctly held that Demorato/Delgado have no federal cause of action for breach of implied warranty under the [MMWA] because that Act provides a remedy only for breach of an implied warranty arising under state law"). *See also Garcia v. Chrysler Group LLC*, 2015 WL 5123134, at *9, 16 (S.D.N.Y. 2015) ("[t]o state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law"); *Minkler v. Apple, Inc.*, 65 F.3d 810, 817-20

(N.D.Cal. 2014) (dismissing state law warranty claim in class action based on failure to give required pre-suit notice and then dismissing MMWA claim because it "will stand or fall with her express and implied warranty claims under state law"); *HRL Land or Sea Yachts v. Travel Supreme, Inc.*, 2009 WL 427375, at *5 (W.D.Mich. 2009) ("[A]n MMWA claim for breach of an implied warranty depends on the plaintiff having a valid state law implied warranty claim"); *Zanger v. Gulf Stream Coach, Inc*., 2006 WL 1494952, at *7 (E.D. Mich. May 25, 2006) ("Ultimately, the applicability of the [MMWA] is directly dependent upon a sustainable claim for breach of warranty. Thus, if there exists no actionable warranty claim, there can be no violation of the [MMWA]."). As one court stated:

> The plaintiffs' individual Magnuson–Moss claim is also defective, because they do not assert an underlying state-law warranty claim. "The Act does not provide an independent cause of action for state law claims, only additional damages for breaches of warranty under state law." *Fedrick v. Mercedes–Benz USA, LLC,* 366 F.Supp.2d 1190, 1200 n. 14 (N.D.Ga.2005) (citing *Walsh v. Ford Motor, Co.,* 807 F.2d 1000, 1016 (D.C.Cir.1986)); *see also Schimmer v. Jaguar Cars, Inc.,* 384 F.3d 402, 405 (7th Cir.2004) (noting that the Act "allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action"); 15 U.S.C. §§ 2301(7), 2310(d)(1) (allowing suit by consumers damaged by a violation of an "implied warranty" and defining "implied warranty" as one "arising under State law"). Thus, to recover under the Magnuson–Moss Act for the breach of an implied warranty, the plaintiffs must assert a viable state-law warranty claim. *Fedrick,* 366 F.Supp.2d at 1200 n. 14. The initial Complaint asserted an implied warranty claim under New Jersey law, (Docket No. 1 ¶¶ 179–89), which the court dismissed. The plaintiffs have not replaced that claim in their FAC.

*Bearden v. Honeywell Int'l, Inc.*, 720 F. Supp.2d 932, 937-38 (M.D. Tenn. 2010).

In this case, there are two reasons to find that Plaintiffs do not have, and have not asserted, a viable state law claim. The first is the simple fact that, as Plaintiffs have "withdrawn" their breach of implied warranty of merchantability claim pursuant to M.C.L. § 440.2314, Plaintiffs have not asserted <u>any</u> state-law warranty claim, to say nothing of a <u>viable</u> state-law warranty claim. Second,

like the MMWA, Michigan law requires notice before bringing suit or the action is barred. *See* M.C.L. § 440.2607(3)(a); *Gorman v. Am. Honda Motor Co.*, 302 Mich. App. at 27 ("plaintiff provided defendants no notice at all … [and] [a]ccordingly, plaintiff is barred from any remedy."). As Plaintiffs admit that none of them provided any pre-suit notice, they would have no viable underlying state claim to support their MMWA claim even if they sought to reinstate their state law claim for breach of implied warranty.

Accordingly, for the reasons set forth above, the Court concludes that Plaintiffs' individual MMWA claims are defective and Count III of the First Amended Complaint will be dismissed.

### E. Putative Class Action

As the Court has dismissed the MCPA and MMWA claims of the named Plaintiffs (as well as their withdrawn claims for unjust enrichment and breach of implied warranty of merchantability), Plaintiffs have asserted no viable claims upon which to base a class action. Therefore, Plaintiff's proposal to proceed with this matter as a class action is denied.

### IV. CONCLUSION

Accordingly, for the reasons articulated above, the Court hereby ORDERS that both the Motion to Dismiss filed by FCA [Dkt. No. 20] and the Motion to Dismiss filed by Schrader [Dkt. No. 22] are GRANTED. IT IS FURTHER ORDERED that Plaintiff's First Amended Complaint is DISMISSED and judgment will enter for Defendants.

SO ORDERED.

Dated: December 7, 2015                    /s/Gershwin A Drain
                                           GERSHWIN A. DRAIN
                                           UNITED STATES DISTRICT JUDGE